ALFRED R. MASTERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Masters v. Commissioner
Docket No. 17901-88
United States Tax Court
T.C. Memo 1994-178; 1994 Tax Ct. Memo LEXIS 178; 67 T.C.M. (CCH) 2731; April 21, 1994, Filed *178 Alfred R. Masters, pro se. For respondent: Frank C. McClanahan. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was assigned pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1]
Respondent determined a deficiency in petitioner's Federal income tax, additions to tax, and additional interest as follows: Additional
Additions to Tax
Interest
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6659
6661
6621(c) 1983
$ 84,452
$ 4,223
[1]
$ 4,052
$ 17,736
[2]
At issue in this proceeding are the portions of the deficiency, additions to tax, and additional interest determined by respondent which are attributable *179 to petitioner's claimed loss and investment tax credit from a master recording leasing program known as the Music Masters, Ltd. Master Sound Recording Lease Program (the Music Masters program). [2] The issues for decision are whether petitioner is entitled to the loss and credit [3] claimed with respect to his lease of a master sound recording, and whether petitioner is liable for the additions to tax for negligence, valuation overstatement, and substantial understatement, and additional interest under section 6621(c) with respect to the master recording leasing transaction. *180 Some of the facts were stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided at John's Island, South Carolina, when his petition was filed. Petitioner was co-owner of Music Masters, Ltd. (Music Masters), a North Carolina corporation, and a promoter of the Music Masters program. On August 4, 1983, petitioner entered into a contract with Music Masters to lease the master sound recording identified as Dog Police, S.P. 4000.23 (the master). The master was acquired by Music Masters from Shoe Productions, Inc., under an agreement dated May 3, 1983. The stated purchase price for the master was $ 1,000,000, to be paid by Music Masters as follows: $ 20,000 upon delivery of the master, and delivery of Music Masters' promissory note in the amount of $ 980,000. No payment of principal or interest was due on the note for 12 years, except from one-third of the profits Music Masters was to receive from the sale of recordings produced from the master. Music Masters paid $ 20,000 to Shoe Productions, Inc., in 1983; however, petitioner presented no evidence that any of the amount represented by the promissory note was paid. Petitioner *181 entered into two lease agreements with Music Masters dated August 4, 1983, with each agreement concerning one leasehold unit in the master. Under the lease agreements, each unit represents a 4-percent ownership interest in the leasehold. In accordance with the lease agreements, petitioner paid Music Masters a total of $ 4,800 for an 8-percent interest in the leasehold. Petitioner and Music Masters elected to transfer investment tax credits attributable to the lease from the lessor to the lessee. On August 5, 1983, petitioner entered into two manufacturing and distribution agreements (one for each 4-percent interest), granting a non-exclusive license to manufacture recordings from the master to Video Record Promotions, Inc., in exchange for petitioner's payment of $ 1,000 per agreement, and a percentage of any net proceeds from sales with respect to the master. Music Masters provided petitioner two appraisals of the master. The appraisal by Lawrence M. Broderick, dated September 10, 1983, concludes that the fair market value of the master on that date was $ 1,000,000. The appraisal by David W. Mathes specifies that the value of the master as of September 7, 1983, was not less *182 than $ 1,000,000. [4] Neither appraiser testified at trial, and petitioner presented no expert witnesses or other evidence to support the claimed value of the master. At trial, petitioner argued that the value of the master was not less than the $ 20,000 actually paid by Music Masters, stating, "you could disallow it down to the $ 20,000, I have no objection to that." Petitioner bears the burden of proving he is entitled to the claimed credit and deductions. Rule 142(a). We considered the Music Masters Program in , *183 affd. and . In Maultsby and Hunt, we concluded that the Music Masters program possessed the characteristics of a generic tax shelter, and that the lease transactions involved in the program were devoid of economic substance and should be disregarded for tax purposes. The Court of Appeals for the Fourth Circuit agreed with our holding in Hunt that the Music Masters program lacked economic substance, and, applying the test articulated in , affg. in part and revg. in part , concluded: In summary, the Tax Court's findings that appellants' investments in master recordings were without a profit motive, were devoid of economic substance, and, therefore, were sham transactions, are ones of fact and are reviewable under the clearly erroneous standard. * * * These findings are not clearly erroneous based on the record before this court. The test of Rice's Toyota is satisfied, and we affirm the *184 Tax Court's conclusion that appellant's leasing activities constituted sham transactions. [Hunt v. Commissioner, 938 F.2d at 472; citations omitted.]
Petitioner has not shown that his master recording leasing transaction differed in any material way from the transactions we considered in Hunt and Maultsby. Petitioner argues that because some cash ($ 20,000) was paid for the master, the transaction has economic substance and qualifies for investment tax credit to the extent of the amount paid. However, like the taxpayers in Maultsby and Hunt, petitioner failed to show that he entered into the master recording lease transaction with a profit motive. Further, he did not establish that the $ 1,000,000 price purportedly paid for the master, upon which he calculated the investment tax credit claimed on his return, bore any relationship to the fair market value of the master. The sale of the master was financed by debt, which in substance, or in fact, was not likely to be paid. Such financing is an indicia of lack of economic substance. The fact that a small percentage of the inflated cost basis relied upon in claiming the investment *185 tax credit was actually paid, does not change the overall character of petitioner's leasing activity from that of a sham transaction that should be disregarded for tax purposes to a for-profit business transaction entitling petitioner to a tax credit. We find that petitioner's leasing activity was devoid of economic substance and lacked profit motive. Therefore, we hold that petitioner is not entitled to deductions for the lease payment made to Music Masters or the distributor fee paid to Video Record Promotions, Inc., and is not entitled to investment tax credit. The remaining issues are petitioner's liability for additions to tax for negligence under section 6653, valuation overstatement under section 6659, and increased interest on tax-motivated transactions under section 6621(c). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care *186 or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Respondent's determination that petitioner was negligent is presumed correct, and petitioner bears the burden of proving that he was not negligent. Rule 142(a). The loss and credit petitioner claimed with respect to the Music Masters program are based in large part on a purported loan which lacked economic substance. Petitioner contends that he was not negligent because he relied upon the certified public accountant and attorney who supplied tax opinions to Music Masters. Neither the accountant nor the attorney testified at trial. While there are situations where reliance on expert or professional advice may satisfy the reasonable and prudent person standard, a taxpayer must establish that the person upon whom he or she relied is qualified to give the advice. Further, the taxpayer must show that the adviser had sufficient knowledge of the facts to render a competent opinion. , affd. , *187 affd. . This petitioner has failed to show. The record before us simply does not support a finding that petitioner relied on the advice of competent and unbiased parties. Petitioner was one of the promoters of the Music Masters tax shelter. We cannot say that reliance on the advice of attorneys engaged by the promoter of the program amounts to reasonable and prudent conduct. Such reliance is not the type of activity which will overcome the addition to tax for negligence or intentional disregard of rules or regulations. ; , affd. without published opinion , affd. sub nom. , affd. sub nom. , affd. without published opinion sub nom. . Respondent's determinations *188 with respect to the additions to tax for negligence are sustained. Respondent determined that petitioner is liable for the addition to tax under section 6659 because the deficiency resulting from the Music Masters transaction was attributable to a valuation overstatement. Under section 6659, a valuation overstatement exists if the value of any property claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition to tax is equal to 30 percent of the underpayment, but only to the extent the underpayment is attributable to the valuation overstatement. Petitioner based his investment tax credit on the master's claimed cost of $ 1,000,000. When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is a valuation overstatement. , affg. ; ; , *189 affd. without published opinion , affd. sub nom. . This Court and others have found section 6659 applicable when credits are disallowed in their entirety due to a lack of economic substance or lack of profit objective, when valuation is an integral factor in such determinations. We hold that petitioner is not entitled to any investment tax credit for the master. Section 6659 does not apply to underpayments of tax which are not "attributable to" valuation overstatements. See , affd. . The lease payment and distributor fee paid by petitioner are not dependent upon valuation of the master. Therefore, these deductions are not attributable to a valuation overstatement, and are not subject to the addition to tax under section 6659. . Section 6661(a) imposes an addition to tax if there is a substantial understatement of income tax. A "substantial *190 understatement" is defined as an understatement which exceeds the greater of $ 5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6661(b)(1). Any portion of the understatement that is also subject to the addition to tax under section 6659 for valuation understatement is not taken into account in determining the substantial understatement of tax for purposes of section 6661. Sec. 6661(b)(3). In calculating understatements under section 6661(a), items for which there is substantial authority or with respect to which all relevant facts were adequately disclosed on the tax return, are not to be considered. Sec. 6661(b)(2)(B). However, in the case of a tax shelter, even full disclosure in the tax return does not reduce this addition to tax. Sec. 6661(b)(2)(C)(i). For this purpose, section 6661(b)(2)(C)(ii) defines a tax shelter as any partnership, entity or other plan or arrangement the principal purpose of which is the avoidance of Federal income tax. The Music Masters program is a tax shelter for purposes of section 6661. The disallowed Schedule C deductions for lease payment and distributor fee will be considered for purposes determining whether *191 the section 6661 understatement of tax threshold has been reached, but the portion of the deficiency attributable to the investment tax credit, which is subject to the section 6659 addition to tax, will be excluded. Then, if the threshold of the greater of $ 5,000 or 10 percent of the tax is met, the section 6661 addition will apply. Section 6621(c) provides for an interest rate of 120 percent of the rate established under section 6621 if there is a substantial underpayment (an underpayment which exceeds $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". The increased interest rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. , affd. without published opinion . We conclude that the Music Masters lease transaction was a tax-motivated transaction, and therefore hold that section 6621(c) is applicable. Based on the foregoing, An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency.↩
2. 120 percent of the interest due on $ 16,507.↩
2. The remaining determinations in the notice of deficiency were not considered at the trial of the Music Masters issues.↩
3. Respondent's determinations attributable to Music Masters for petitioner's 1983 taxable year are the disallowance of a claimed Schedule C loss in the amount of $ 6,000, consisting of lease expenses and a distribution fee in the respective amounts of $ 4,800 and $ 2,000, reduced by reported income of $ 800, and disallowance of investment tax credit in the amount of $ 8,000.↩
4. The parties have stipulated that Mr. Mathes was enjoined from evaluating master recordings pursuant to the methodology used in his appraisal. The United States District Court for the Western District of North Carolina notes in its unpublished Memorandum of Decision in United States v. Music Masters, Ltd.↩, Case No. C-C-84-228-P, that Mr. Mathes was enjoined pursuant to a Court order issued by the United States District Court for the Middle District of Tennessee.