RONALD J. KIMS AND LILLIAN T. KIMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kims v. Commissioner
Docket No. 6586-87
United States Tax Court
T.C. Memo 1994-262; 1994 Tax Ct. Memo LEXIS 263; 67 T.C.M. (CCH) 3071; June 8, 1994, Filed *263 For petitioners: Mark Clement. For respondent: Michael A. Yost, Jr.
NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr. pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes for the taxable years 1980, 1981, and 1982 as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
6659
6661
1980
$ 10,815.35
$ 540.77
--
--
--
1981
34,801.10
--
$ 1,740.06
[1]
$ 8,523.16
--
1982
7,718.77
--
--
--
1,348.02
$ 806.35
*264 Respondent also determined that petitioners are liable for additional interest under section 6621(c) for each of the years in issue. After a concession by respondent and the resolution of certain issues at a prior trial, [2] the issues remaining for decision are: (1) Whether petitioners are entitled to deductions related to their initial $ 17,000 payment to Children's Fantasy Limited (CFL or the partnership); (2) if petitioners are entitled to a depreciation deduction related to CFL's acquisition of a videotape, whether they may utilize the 200-percent double declining method of depreciation rather than the income forecast method; (3) whether petitioners are entitled to deduct as interest expense amounts paid by them to CFL in 1980 and 1982; (4) whether petitioners are liable for the addition to tax under section 6653(a)(2) for 1981 to the extent of the deficiency in tax attributable to transactions related to CFL; (5) whether petitioners are liable for an addition to tax under section 6659 for the taxable year 1981 due to CFL's valuation overstatement; and (6) whether, for the taxable years 1980 and 1981, petitioners are liable for the increased rate of interest provided by section *265 6621(c) for substantial underpayments of income tax attributable to tax-motivated transactions. This case was submitted fully stipulated under Rule 122. We incorporate by reference the stipulation of facts and the attached exhibits. [3] Significantly, the parties have stipulated that most of the facts and circumstances relating to CFL are set forth in Helba v. Commissioner, 87 T.C. 983 (1986), *266 affd. without published opinion 860 F.2d 1075 (3d Cir. 1988). [4] The parties have also stipulated to certain additional facts which relate to petitioners' involvement with CFL. *267 At the time their petition was filed, petitioners resided in Glenshaw, Pennsylvania. Background
During the relevant time period, petitioner Ronald Kims (petitioner) was an officer in a corporation which owned a cleaning and janitorial business; he also operated a construction business as a sole proprietor. Petitioner Lillian Kims was not employed outside the home. Petitioners entered into a variety of investments. On October 3, 1979, petitioner executed both a Subscription Agreement and an Assumption Agreement (the Assumption Agreement) relating to CFL. He also executed a Certificate of Limited Partnership which became effective October 4, 1979. Petitioner acquired 17 limited partnership units in CFL. His initial contribution was $ 17,000, which he paid in installments, paying $ 13,600 in 1979 and $ 3,400 in 1980. Between 1980 and 1984, petitioner made additional payments to CFL totaling $ 8,972.39. Of this amount, $ 2,500.53 was paid in 1980, and $ 3,971.43 was paid in 1982. These payments were made in accordance with paragraph (a) of the Assumption Agreement which required limited partners to make contributions to cover minimum annual interest in the event that *268 CFL was not in a position to make the minimum payments. The Certificate of Limited Partnership described CFL in the following manner: The business of the Partnership is to acquire worldwide ownership and ancillary rights to a children's television series consisting of 13 half-hour programs and entitled "Memoirs of a Fairy Godmother", including the copyright therein, the master video tape thereof and all positive prints and tapes manufactured therefrom, to commercially exploit the programs so acquired in all forms of television media * * * to produce and distribute ancillary products based upon the programs, and to engage in any and all activities related or incidental thereto.
In 1979, CFL acquired "Memoirs of a Fairy Godmother" (Memoirs) at a cost of $ 2,300,000. The partnership paid cash in the amount of $ 230,000. A note for $ 2,070,000 was executed simultaneously with the $ 230,000 payment. The price, which substantially exceeded the value of Memoirs, was not directly related to the cost of production nor was it the result of an arm's-length negotiation. CFL recovered between $ 5,000 and $ 10,000 of its investment in Memoirs between 1979 and 1984. For the taxable *269 years 1979, 1980, and 1981, CFL generated tax losses totaling $ 1,650,256. As a limited partner in CFL, petitioner claimed a distributive share of losses from the partnership in 1980 and 1981 in the amounts of $ 38,152 and $ 29,705, respectively. Respondent determined that the CFL transactions (the transactions) underlying the losses claimed by petitioners did not support the losses claimed. In Helba v. Commissioner, 87 T.C. 983 (1986), affd. without published opinion 860 F.2d. 1075 (3d Cir. 1988), the Court considered losses claimed by CFL's general partner relating to CFL during 1979, 1980 and 1981. In Helba, the Court concluded that "The totality of facts and circumstances establish that the purchase transactions here in issue were in substance shams lacking economic significance beyond expected tax benefits." Helba v. Commissioner, supra at 1014, citing Falsetti v. Commissioner, 85 T.C. 332 (1985). As noted above, petitioners have stipulated that the facts and circumstances relating to CFL were properly recounted in Helba. Petitioners have provided *270 no compelling reason for us to revisit our legal conclusion in that case. Helba therefore forms the basis for our analysis. Discussion
As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a). The fact that this case was submitted fully stipulated under Rule 122 does not alter the burden of proof. Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). Issues 1 & 2. Petitioners' Entitlement to Deductions Relating to Their Initial $ 17,000 Payment to Children's Fantasy Limited
As noted above, this Court concluded in Helba that the transactions in which CFL engaged with respect to the purchase of Memoirs were "completely lacking in economic substance and cannot be recognized for Federal tax purposes." Helba v. Commissioner, supra at 1005. Petitioners appear to concede, as they must, that Helba precludes a holding here that they are entitled to the entire amount of the losses that they claimed *271 relating to CFL during the years in issue. Petitioners nonetheless contend that "payments equal to the amount of the petitioners' substantial cash payments are deductible, even if the court finds that the transactions as reported on petitioners' returns were economic shams, because there is economic substance to the portions of petitioners' transactions where cash was actually paid and irrevocably parted with." The essence of this contention appears to be that although the transactions in which petitioners engaged were economic shams, the transactions were not factual shams, and the transactions should be recognized to the extent of the payments actually made. Petitioners correctly distinguish between factual and economic shams, but reach an incorrect conclusion on the basis of that distinction. It has been stated that -- An economic sham is distinguished from a factual sham. A factual sham is one in which the alleged transactions never actually took place. In an economic sham, or a sham in substance, the alleged transactions actually took place, but are nonetheless without economic substance. * * *
Lerman v. Commissioner, 939 F.2d 44, 48 n.6 (3d Cir. 1991), *272 affg. Fox v. Commissioner, T.C. Memo. 1988-570. Petitioners' argument that a portion of their payments can be deducted is without merit because, as has previously been noted by the Court of Appeals for the Third Circuit, "If a transaction is devoid of economic substance * * *, it simply is not recognized for federal taxation purposes". Lerman v. Commissioner, supra, at 45. Citing Frank Lyon Co. v. United States, 435 U.S. 561 (1978), Cottage Savings Association v. Commissioner, 499 U.S. 554 (1991), and Pleasant Summit Land Corp. v. Commissioner, 863 F.2d 263 (3d Cir. 1988), affg. in part and revg. in part T.C. Memo. 1987-469, petitioners contend that this Court should give effect to what actually occurred. In petitioners' view, what actually occurred was the purchase of an asset for the amount of cash which actually changed hands. Petitioners argue that such purchase would support partial allowance of the amounts originally deducted. We disagree. The fact that petitioners actually paid $ 17,000 *273 to CFL does not change the overall character of the transactions in which petitioners and CFL engaged. Masters v. Commissioner, T.C. Memo. 1994-178 ("The fact that a small percentage of the inflated cost bases relied upon in claiming the investment tax credit was actually paid, does not change the overall character of petitioner's leasing activity from that of a sham transaction that should be disregarded for tax purposes to a for-profit business transaction entitling petitioner to a tax credit."). Since we have found no reason to revisit our holding in Helba that the transactions at issue were economic shams, those transactions are disregarded for tax purposes. Lerman v. Commissioner, supra; Brown v. Commissioner, 85 T.C. 968, 1000 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988); Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1243 (1981); see also Estate of Franklin v. Commissioner, 544 F.2d 1045, 1049 (9th Cir. 1976) (depreciation depends upon an *274 investment in property), affg. 64 T.C. 752 (1975). The $ 17,000 payment by petitioners was simply the mechanism by which petitioners became involved in the transaction. Thus, the payment was intended to secure tax benefits, not an interest in depreciable property or in any economically viable project, and was therefore a "sham in substance." Falsetti v. Commissioner, 85 T.C. 332, 347 (1985). We think petitioners' reliance on Frank Lyon Co. v. United States, supra, Cottage Savings Association v. Commissioner, supra, and Pleasant Summit Land Corp. v. Commissioner, supra, is misplaced. Thus, in Frank Lyon Co., the Supreme Court stated that "a transaction must be given its effect in accord with what actually occurred and not in accord with what might have occurred." Id. at 576. In the present case, what actually occurred was the purchase of tax benefits by petitioners. Insofar as Cottage Savings Association is concerned, the Court of Appeals for the Third Circuit has stated that "Cottage cannot be read for *275 the proposition that, as long as a transaction is bona fide, i.e., actually occurred, it cannot be denied economic substance." Lerman v. Commissioner, 939 F.2d 44, 55-56 n.14 (3d Cir. 1991). Finally, in Pleasant Summit Land Corp., whether the transactions in question lacked economic substance or were economic shams was not at issue, and we do not read the opinion of the Court of Appeals in that case to authorize the deduction of amounts paid merely to purchase tax benefits. Accordingly, petitioners' argument is untenable, and petitioners are not entitled to any deductions based upon actual payments made either by CFL or by petitioner. The Internal Revenue Code (the Code) does not reward taxpayers for their efforts to subvert the Code through the purchase of tax benefits in transactions completely lacking in economic substance. Because we have determined that petitioners are not entitled to any deductions related to their transactions with CFL, we need not consider the appropriate method of depreciation to be applied to their "interest" in Memoirs had they been so entitled. Issue 3. Deductibility of Petitioners' 1980 and 1982 Payments *276 to CFL as Interest Expense
Advancing a theory similar to that discussed above, petitioners propose that because they actually made payments in accordance with paragraph (a) of the Assumption Agreement in 1980 and 1982 in the respective amounts of $ 2,500.53 and $ 3,972.43 (the payments), they should be entitled to deduct those payments as interest expense. Paragraph (a) of the Assumption Agreement required limited partners to make contributions to cover minimum annual interest in the event that CFL was unable to make the payment. If petitioners had been genuinely indebted and thus had been obligated to make the payments, the Commissioner would have been obliged to recognize the payments. Rose v. Commissioner, 88 T.C. 386, 423 (1987), affd. 868 F.2d 851 (6th Cir. 1989); Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 96 (4th Cir. 1985), revg. in part 81 T.C. 184 (1983). In order for a note to represent genuine debt, the parties must have intended that the note be enforceable at the time it was executed. Warren v. Commissioner, T.C. Memo. 1989-34. *277 We find, on the basis of the extraordinarily high effective interest rate applied to the note executed by CFL, as well as on the basis of the relationships among the parties, as described in Helba, that the parties did not intend, and could not have intended, that the note be enforceable. Helba v. Commissioner, 87 T.C. at 1008-1010. In the absence of genuine indebtedness, petitioners are not entitled to interest deductions. Rice's Toyota World, Inc. v. Commissioner, supra.
Issue 4. Petitioners' Liability for an Addition to Tax for Negligence Under Section 6653(a)(2) for 1981 to the Extent of the Deficiency in Tax Attributable to Transactions Related to CFL
Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest on the portion of an underpayment attributable to negligence. Negligence, for purposes of section 6653(a)(2), is the lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determination *278 under this section is erroneous. [5]Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners assert that they were reasonable in relying on the CFL offering memorandum because they had had some success as investors and therefore "needed no one else's advice and had good reason to be confident in their investigatory methods regardless of the field in which they were investing." Petitioners also argue that as persons unfamiliar with the tax implications of the transactions into which they entered, they should not be held to the same standard as more sophisticated investors. The foregoing two arguments undermine each other. *279 Petitioners were sufficiently experienced investors that they should either have perceived that the CFL transactions were shams, or they should have recognized the need to consult outside advisers familiar with the industry in which they were considering investing. The offering memorandum reviewed by petitioners led us to conclude in Helba that "it is unfathomable that a reasonable person could believe that there was a basis for investing in * * * [CFL] other than for the acquisition of tax benefits." Helba v. Commissioner, 87 T.C. at 1012. Petitioners have failed to persuade us to conclude otherwise in the present case. Because we find that petitioners failed to act reasonably under the circumstances, we sustain respondent's determination that they are liable for the addition to tax under section 6653(a)(2) for 1981 to the extent of the deficiency in tax attributable to transactions related to CFL. Issue 5. Petitioners' Liability For an Addition to Tax Under Section 6659 for 1981 Due to CFL's Valuation Overstatement
Respondent determined that petitioners are liable for the addition to tax under section 6659 for a valuation overstatement. *280 A valuation overstatement occurs when the value of any property claimed on any return is 150 percent or more of its correct value or adjusted basis. Sec. 6659(c). Respondent specifically determined that petitioners are liable for the section 6659 addition to tax with respect to the underpayment attributable to "their share" of the depreciation claimed by CFL. Their share of this amount was $ 20,718 for 1981. The depreciation claimed by CFL was based upon the inflated price agreed upon by the parties for the partnership's acquisition of Memoirs. The acquisition of Memoirs was a transaction lacking in economic substance. Helba v. Commissioner, supra.The correct basis for an item acquired in a transaction lacking economic substance is zero, and any positive basis claimed is therefore a valuation overstatement. Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991), affg. T.C. Memo. 1990-205, affg. T.C. Memo. 1989-684; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988). Consequently, respondent's determination with respect to the *281 application of the addition to tax under section 6659 is sustained. Issue 6. Petitioners' Liability for the Increased Rate of Interest Provided by Section 6621(c) for 1980 and 1981
For 1980 and 1981, respondent determined that petitioners are liable under section 6621(c) for additional interest on substantial underpayments attributable to a tax motivated-transaction. [6]Section 6621(c)(3)(A)(v) identifies a "sham or fraudulent transaction" as a form of a tax-motivated transaction. As we here reaffirm our holding in Helba, that the transactions in which CFL engaged were economic shams, we necessarily hold that petitioners are liable for the increased rate of interest under section 6621(c). Patin v. Commissioner, 88 T.C. 1086, 1128-1129 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), *282 affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988). Respondent's determination with respect to the additional interest is therefore sustained. Conclusion
To reflect the foregoing, as well as a concession by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on $ 16,882.52.↩
2. Respondent's deficiency determination relating to petitioners' involvement with the Arden Hill Farm Standardbred Breeding program was sustained in Brown v. Commissioner, T.C. Memo. 1992-379, affd. without published opinion sub nom. Konenkamp v. Commissioner, 14 F.3d 47 (3d Cir. 1993). Also sustained in that case was respondent's determination of various additions to tax and additional interest relating to that program, specifically including additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a) for 1980 and under section 6653(a)(1)↩ for 1981.
3. The preamble to the parties' stipulation of facts states, in part, that "The terms 'partnership', 'partner', 'investment', 'partnership units', 'acquire', 'contribution', 'assumption', 'subscription', 'promissory note', 'minimal annual interest', and 'acceptance', together with all relative derivatives and any other term used to characterize the form of transaction, are used in this stipulation merely for convenience in describing what petitioners contend are transactions." Throughout this Opinion we shall similarly use such terms merely for the sake of convenience.↩
4. Because most of the relevant facts regarding Children's Fantasy Limited were set forth in Helba v. Commissioner, 87 T.C. 983 (1986), affd. without published opinion 860 F.2d 1075↩ (3d Cir. 1988) we recount only those facts necessary to a basic understanding of the issues which we address.
5. We need not address petitioners' liability for the addition to tax under section 6653(a)(1) for 1981 because that issue was resolved in respondent's favor in Brown v. Commissioner, T.C. Memo. 1992-379, affd. without published opinion sub nom. Konenkamp v. Commissioner, 14 F.3d 47↩ (3d Cir. 1993).
6. Section 6621(c)↩, as in effect for the years in issue, imposed a rate of interest equal to 120% of the otherwise applicable rate on interest accruing after Dec. 31, 1984, on such underpayments.